UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VALERIE RODDEY o/b/o M.A.A.,

      Plaintiff,

               **Hon. Hugh B. Scott**

    v.

               **17CV1147**

               **CONSENT**

COMMISSIONER,

               **Order**

      Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (plaintiff), 14 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 9).

## PROCEDURAL BACKGROUND

The plaintiff ("Valerie Roddey" or "plaintiff") filed an application for disability insurance benefits on August 7, 2014 [R. 13], for her child, claimant M.A.A. ("claimant" or "M.A.A."). That application was denied initially. The plaintiff appeared before an

Administrative Law Judge ("ALJ"), who considered the case <u>de novo</u> and concluded, in a written decision dated July 21, 2016, that the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on September 14, 2017, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on November 8, 2017 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 12, 14), and plaintiff duly replied (Docket No. 15). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff is the mother of the infant claimant M.A.A., a school-age youth at the time of the hearing. Plaintiff contends that claimant was disabled as of the onset date of May 23, 2014. Plaintiff claims her child had the following impairments deemed to be severe by the Administrative Law Judge: borderline intellectual functioning ("BIF") and attention deficit hyperactivity disorder ("ADHD") [R. 16].

## MEDICAL AND VOCATIONAL EVIDENCE

As for claimant's BIF, the ALJ found that it did not meet or equal Listing 112.05, intellectual disability, because it had not resulted in marked impairment or difficulties in at least two of the following: age-appropriate cognitive/communication function; age-appropriate social functioning; age-appropriate personal functioning; or maintaining concentration, persistence, or pace; or mental incapacity evidence by dependence upon others for personal needs and inability to follow directions; or valid verbal, performance, or full scale IQ of 59 or less; or valid verbal, performance, or full scale IQ of 60-70 and either a physical or other mental impairment imposing

additional and significant limitation of function or marked impairment in age-appropriate social functioning; age-appropriate personal functioning; or maintaining concentration, persistence, or pace and a physical or other mental impairment imposing additional and significant limitation of function [R. 16]. Plaintiff argued claimant's IQ scores met this Listing [R. 16, 34]. The ALJ relied upon consultative examiner Dr. Gregory Fabiano, Ph.D., and his conclusion, while claimant had a full-scale IQ score of 70, that score was a poor indicator of claimant's overall level of cognitive ability because of the widely divergent scores obtained [R. 16, 361, 316, 328].

The ALJ reviewed the six infant domains, 20 C.F.R. § 416.926a, and concluded that claimant did not have impairment or combination of impairments with "marked" limitations in two of the domains or at least one domain at the "extreme" limitation [R. 19-24]. The table below lists the domains and the ALJ's finding of degree of impairment.

| Domain | Degree of Impairment |
| --- | --- |
| Acquiring and Using Information | Less than marked |
| Attending and Completing Tasks | Less than marked |
| Interacting and Relating with Others | No limitation |
| Moving about and Manipulating Objects | Less than marked |
| Caring for Self | No limitation |
| Health and Physical Well-Being | No limitation |

[R. 19-24]. For acquiring and using information the ALJ found that, despite claimant having IQ scores that showed extremely low range, these scores underestimate plaintiff's ability [R. 19-20, 361, 16]. As for attending and completing tasks, the ALJ concluded that the claimant had IEP and needed extra services at school, but claimant had been doing better with Strattera [R. 20-21, 240-50, 353]. As for interacting and relating with others, the ALJ found claimant was cooperative and talkative during hearing and no evidence of interaction limitations in the record (at age 10) [R. 21, 35-45]. On moving about and manipulating objects, the ALJ found claimant

engaged in occupational therapy, but the ALJ did not find evidence of any limitation [R. 22]. As for caring for self, the ALJ found no limitation because the ALJ found no evidence of limitation in this category [R. 22-23]. Finally, as to claimant's health and physical well-being, the ALJ again found no limitation, without evidence of limitation [R. 23-24]. As a result, the ALJ held claimant was not disabled [R. 24].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A claimant under 18 years of age, such as the claimant here, is "disabled" under the Social Security Act if she has a medically determinable physical or mental impairment (or combination of impairments) that result in "marked and severe functional limitations," and the impairment or impairments must have lasted or expect to last for at least twelve months. 42 U.S.C. § 1382c(a)(3)(C) (see Docket No. 14,

Def. Memo. at 11). Under the applicable regulations, the infant claimant must show that she is not working, that she has a "severe" impairment or combination of impairments, and that her impairment or combination of impairments was of listing-level severity, that is met, medically equaled, or functionally equaled the severity of listed impairments, 20 C.F.R. § 416.924. Functional equivalence of limitations, in turn, are evaluated on six domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for oneself; and health and physical well-being, id. § 416.926a(b)(1)(i)-(vi). Marked limitations in two domains of functioning or an extreme limitation in one domain (not claimed here) constitutes a functional equivalent to a listed impairment, id. § 416.926a(d). Each domain is evaluated on whether the claimant has no limitation, is less than marked, marked, or extreme limitation, id. § 416.926a(b)(1).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from working. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether the claimant is suffering from a disability, the ALJ must employ a multi-step inquiry:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations, as assessed for the six domains of infant functioning.

20 C.F.R. § 416.924(a)-(d); see 20 C.F.R. §§ 416.920, 416.972, 416.923, 416.926, 416.926a; see Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. § 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

*Application*

I. Use of Claimant's IQ Scores

At issue here is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff contends that the ALJ did not apply the appropriate standard for assessing whether claimant had defects had deficits in adaptive functioning for borderline intellectual functioning (Docket No. 12, Pl. Memo. at 1, 9-14). Specifically, the ALJ erred in relying upon Dr. Fabiano's dismissal of claimant's IQ scores (id. at 12). In reply, plaintiff argues that defendant did not address this contention and that defendant cannot now argue new grounds when the ALJ did not apply the correct standards (Docket No. 15, Pl. Reply Memo. at 1).

To claim an intellectual disorder for a child between ages 3 and 18 the claimant must meet the requirements of Listing 112.05, and the claimant must have "significantly subaverage general intellectual functioning" along with "deficits in adaptive functioning," 20 C.F.R. Pt. 404, Subpt. P, App. 1, 112.05 (2016[1]) (hereinafter "Listing 112.05") (Docket No. 14, Def. Memo. at 12; Docket No. 12, Pl. Memo. at 9-10). Adaptive functioning is an individual's "[a]bility to

---

[1]This Listing was amended in 2017.

cope with the challenges of ordinary everyday life," Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012) (quotation omitted) (Docket No. 12, Pl. Memo. at 10-11). This Listing gave claimants several options to show subaverage intellectual functioning and deficits, id. Listing 112.05(A)-(F) (Docket No. 14, Def. Memo. at 12).

Plaintiff focused on the Listing requirement based on IQ scores (Docket No. 12, Pl. Memo. at 10), see Listing 112.05(D) (IQ of 60 to 70 and physical or other mental impairment), (E)(2) (IQ of 60 to 70 and other conditions from Listing 112.02B2b, B2c, or B2d (2016)). She argues that the ALJ did not apply the correct legal standard and failed to make findings on other parts of Listing 112.05(A)-(F) (id.). She faults the ALJ for relying upon Dr. Fabiano and his dismissal of the IQ scores, despite the doctor's prior statement that the results of the evaluation were valid and reliable estimates of M.A.A.'s current functioning (id. at 12; [R. 360]). Plaintiff argues that adaptive functioning "refers to the claimant's real world ability to cope with everyday struggles—not the claimant's testing ability" (Docket No. 12, Pl. Memo. at 12). The ALJ did not discuss evidence of how M.A.A. functioned in the real world and failed to apply the Talavera standard (id.).

Defendant distinguishes Talavera and other cases cited by plaintiff (cf. id. at 10-11, citing cases) because that case law involves adult claimants and not infant claimants (Docket No. 14, Def. Memo. at 13-14). Defendant argues that substantial evidence supports the ALJ's finding that M.A.A.'s adaptive functioning was not significantly limited, that she while with learning disability her adaptive functioning was normal and she had success when medicated (id. at 14; [R. 351, 353, 354, 603, 605]), with M.A.A.'s school performance being average (Docket No. 14, Def. Memo. at 14; see [R. 359]). Defendant further argues that plaintiff does not fault these

7

findings or contend that claimant otherwise met the Listing. Instead, plaintiff focuses on the ALJ's consideration of the evidence, see Brault v. Soc. Sec. Admin., 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). (Docket No. 14, Def. Memo. at 15.)

On November 25, 2014, Dr. Fabiano evaluated M.A.A. [R. 359]. M.A.A. reported that she did well in school, with plaintiff adding that M.A.A. performed well when she took her medication [R. 359]. M.A.A. was in special education, in a 12:1:1 classroom and received OT, PT, and vision therapy [R. 359]. Plaintiff reported behavioral problems relating to claimant's ADHD [R. 359]. During Dr. Fabiano's observation, claimant's attention and concentration was good, with claimant understanding instructions [R. 360]. Dr. Fabiano said that the "results of the evaluation are considered to be valid and reliable of current functioning" [R. 360]. Plaintiff argues that this is contradictory to the doctor's opinion regarding the IQ (Docket No. 12, Pl. Memo. at 12) but defendant contends this is a misreading of this opinion; that the evaluation here refers to Dr. Fabiano's behavioral observations distinct from the testing (Docket No. 14, Def. Memo. at 13 n.4). The doctor then administered standardized intelligence tests which revealed verbal IQ of 87 and full-scale IQ of 70 [R. 360-61]. Dr. Fabiano, however, concluded that the full-scale IQ "is likely a poor indicator of [claimant's] overall level of cognitive ability as there was considerable dispersion among her composite scores" [R. 361]. The composite scores were:

| Area | Standard Score |
| --- | --- |
| Verbal Comprehension Index | 87 |
| Perceptual Reasoning Index | 71 |
| Working Memory Index | 65 |
| Processing Speed Index | 73 |
| FULL SCALE IQ | 70 |

[R. 361]. M.A.A.'s verbal comprehension abilities were in the low average range, her perceptual reasoning and her processing speed are in the borderline range, her working memory was in the extremely low range [R. 361-62]. Dr. Fabiano opined that these scores "suggest that the claimant may have difficulty in completing tasks expected of others of the same chronological age in areas of nonverbal reasoning, working memory, and processing speed" [R. 362]. M.A.A.'s reading achievement score indicates a learning disorder in that area [R. 362]. All of these indicate a learning disability rather than a mental impairment.

Dr. Fabiano concluded that M.A.A. did not appear to have limitations in responding to changes in the environment, ask questions, and request assistance in an age-appropriate manner [R. 362]. M.A.A. appears to have mild limitations in her ability to attend to, follow, and understand age-appropriate directions and interact adequately with adults [R. 362]. She also has mild or moderate limitations in her ability to complete age-appropriate tasks, adequately maintain appropriate social behavior, and learn in accordance with her cognitive functioning [R. 362]. Dr. Fabiano concludes, however, that M.A.A.'s results are consistent with learning problems but "this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis" [R. 362] (see Docket No. 14, Def. Memo. at 14). Dr. Fabiano recommends continued current educational placement in special education and M.A.A. has fair prognosis given school and home support [R. 362-63].

This Court agrees with defendant that Dr. Fabiano's reference to the "results of the evaluation" [R. 360] meant the doctor's behavioral observations of M.A.A. and not to her IQ scores (but cf. Docket No. 12, Pl. Memo. at 12).

Plaintiff argues the ALJ erred in focusing only on M.A.A.'s test scores and not assessing her abilities to cope and meet the demands of ordinary life (Docket No. 12, Pl. Memo. at 12). Dr. Fabiano's rejection of M.A.A.'s IQ score was an opinion on her abilities. Furthermore, the ALJ considered plaintiff's academic performance, despite being in a special education setting [R. 18].

Even accepting claimant's IQ, plaintiff has not met the other parts of Listing 112.05 for BIF, that is, another mental impairment or physical impairment causing additional and significant limitation. Plaintiff argues that the ALJ did not consider how claimant functioned in the real world and instead focused on analysis of test scores (Docket No. 12, Pl. Memo. at 12), cf. Talavera, supra, 697 F.3d 145. Plaintiff notes claimant's IEP, her issues with focusing and other issues pointing to her adaptive functioning (id. at 13-14). Her claim based upon M.A.A. had a learning disability (see id.; [R. 243]. Plaintiff points out other aspects of M.A.A.'s daily life that show diminished ability, but she only points to grooming her hair [R. 46] and difficulty in sharing [R. 50] (id.) other than what could be attributed to her learning disability. Despite the learning disability, claimant was noted to have an average academic performance [R. 353, 354] (see Docket No. 14, Def. Memo. at 14).

There is sufficient evidence of claimant's ability to function daily. As defendant notes (id. at 15, citing Brault, supra, 683 F.3d at 448), the ALJ did not need to discuss every piece of evidence to support his findings. Therefore, plaintiff's motion on this ground is **denied**.

II.     Application of Six Infant Domains

Plaintiff next argues that the ALJ gave short shrift to discussing the six infant domains, concluding in a few sentences that plaintiff at most may have had less than marked limitations

10

(Docket No. 12, Pl. Memo. at 1, 14-16). She cites Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984), as requiring the ALJ to explain the rationale with sufficient specificity. Defendant argues that plaintiff mistakes the ALJ's duty to consider evidence with the duty to discuss evidence (Docket No. 14, Def. Memo. at 16), see Brault, supra, 683 F.3d at 448.

Again, the Second Circuit in Brault held that the ALJ "does not have to state on the record every reason justifying a decision," 683 F.3d at 448, "'[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss the evidence submitted,'" id. (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)); Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 58 (2d Cir. 2013) (with infant claimant, "even if the ALJ was not as explicit in his reasoning on this issue as is possible," the ALJ need not state every reason for the decision); Messina v. Colvin, No. 3:15-cv-01790(VLB), 2017 WL 476770, at *13 (D. Conn. Feb. 6, 2017). Therefore, the ALJ can state briefly claimant's condition in the six infant domains.

Even if the ALJ needed to state more in the decision on these domains, plaintiff also has not shown an extreme limitation in any one domain or which of the domains should have been found to be marked of the six infant domains. As a result, plaintiff's motion on this ground is **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 12) judgment on the pleadings is **denied**, and defendant's motion (Docket No. 14) for judgment on the pleadings is **granted**. Thus, the decision of the defendant Commissioner is **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.

_s/Hugh B. Scott_
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
April 17, 2019